IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARYLAND MARINE INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3030 |
| | § | |
| UNITED STATES OF AMERICA, *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The defendant and crossplaintiff, the United States, moves under 28 U.S.C. § 1404(a) to transfer this admiralty case from this district to the Northern District of Alabama, Florence Division, where the incident at issue occurred, for the "convenience of the parties and in the interests of justice." (Docket Entry No. 29). Maryland Marine, Inc., the plaintiff and crossdefendant, opposes the motion.

Based on a careful review of the pleadings, the motion and response, the record, and the applicable law, this court grants the motion to transfer. This court concludes that transfer is appropriate whether the degree of deference given to the plaintiff's choice of forum is that announced in *In re Volkswagen of Am. Inc.*, 506 F.3d 376, 384 (5th Cir. 2007), currently pending for *en banc* reconsideration, that transfer must be granted when the party seeking transfer shows "good cause" and "[w]hen the transferee forum is clearly more convenient," or the more deferential standard announced in some earlier cases, that transfer may be

granted only when the moving party shows that convenience and justice "substantially" favor transfer. The reasons for this conclusion are set out in detail below.

## I.      Background

On August 3, 2006, the tug M/V Potomac and the barges HTCO 3016 and HTCO 3003 entered the Wilson Locks on the Tennessee River in Alabama. Maryland Marine, Inc. owned the three vessels. Maryland Marine is a Delaware corporation with its principal place of business in Houston. The Wilson Locks are operated by the Army Corps of Engineers.

The lead barge, HTCO 3016, became wedged under one of the gates in the Wilson Locks, damaging the gate and the wall of the locks. The repairs cost $5,093,853.86. The repairs took place both at the site and at a Tennessee Valley facility across the river. The incident and the repairs took place in the Northern District of Alabama.

Maryland Marine sued the United States in the Southern District of Texas, the district in which it has its principal place of business. Maryland Marine alleges negligence by the Corps of Engineers in operating the Wilson Locks. The United States counterclaimed against the flotilla *in rem* under the Rivers and Harbors Act, 33 U.S.C. §§ 408, 412, for the damages to the locks. This motion to transfer followed.

## II.     The Standard for a Motion to Transfer

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to

2

place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Because a plaintiff has the privilege of choosing the venue in which to file, the defendant bears the burden of proving a transfer of venue.

The preliminary question in a change of venue motion is whether the suit could have been filed in the proposed transferee district. In this admiralty action, venue is proper in the Southern District of Texas, because it is where Maryland Marine has its principal place of business. Venue is also proper in the Northern District of Alabama because the United States may be served there. Because venue is proper in the destination district, this court must consider a number of private and public interest factors, "none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 340 (5th Cir. 2004).[1] The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen I,* 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will

---

[1] The Fifth Circuit has stated the location of counsel is irrelevant to the venue analysis and an improper factor for courts to consider. *In re Horseshoe Entm't,* 337 F.3d 429, 434 (5th Cir. 2003).

govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id*.

The Fifth Circuit in *In re Volkswagen* recently considered the proper standard for transferring venue. 506 F.3d 376. In *Volkswagen*, the district court denied the defendants' motion to transfer venue from the Marshall Division of the Eastern District of Texas to the Dallas Division of the Northern District of Texas. *Id*. at 379. The suit arose from a car accident in Dallas County, Texas. The defendants asserted that transfer should be granted because: 1) the car was purchased in Dallas County; 2) the accident occurred in Dallas; 3) Dallas residents witnessed the accident; 4) Dallas police and paramedics were involved; 5) the autopsy was performed by a Dallas doctor; 6) the third-party defendant lived in Dallas; 7) none of the parties or witnesses lived in the Marshall Division; and 8) none of the events occurred in the Marshall Division. *Id*. at 378–79. The Fifth Circuit recognized a history of conflicting precedent over the proper deference to be given a plaintiff's choice of forum. *Id*. at 381–84. The circuit rejected the standard that the moving party must show that convenience and justice "substantially" favor transfer, instead holding that "a party seeking transfer 'must show good cause'" and therefore transfer must be granted "[w]hen the transferee forum is clearly more convenient." *Id*. at 382, 384. Because that case is pending before the en banc court, the analysis below applies both standards.

4

**III.     The Private Interest Factors**

    **A.     The Availability and Convenience of Witnesses and Parties**

Convenience for the witnesses has been recognized as "the most important factor under § 1404(a)." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005). "[I]t is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *State Street Capital Corp. v. Dente*, 855 F.Supp. 192, 198 (S.D. Tex. 1994). The parties have filed initial disclosures and declarations identifying the location of likely witnesses and the importance of their testimony. Because the incident and repairs occurred in the Northern District of Alabama, the eyewitnesses to the allision, most of those involved in the allision and those charged with responsibility for repairing the damage live and work in or near that district.

In their initial disclosures, Maryland Marine and the United States named many of the same people likely to have discoverable information that may be used to support the claims or defenses. Those named include the individuals involved with the locks operation, who work for the Corps of Engineers. These individuals, Jerry Holt, the lock operator (now retired), Gary Bowling, the lock master, and Jim Davis, the area operations manager, are identified as in the U.S. Army Engineer District in Nashville. In a declaration, Donald Dean, the current lockmaster, stated that the locks are operated by the U.S. Army Corps of Engineers, which employs twelve people in the facility in Florence, Alabama. These

5

employees report to the Area Operations Manager in Florence, who in turn report to the Nashville District office. (Docket Entry No. 29, Ex. B).

Other individuals identified in the initial disclosures were pilots and tankermen in the flotilla when the allision occurred, who are present or former employees of Maryland Marine. They are James Pitts, who lives in Kirbyville, Texas (no longer employed by Maryland Marine); Otis Bryars, who lives in Mobile, Alabama; Dana Haynes, who lives in Raisin, California; and Vandaven Johnson, who lives in Arlington, Texas (and is no longer employed by Maryland Marine). A third group is individuals who work for the U.S. Army Corps of Engineers and were involved in the repair work after the allision. They include Robert Baulsir, Gerald Choat, Jeff Ross, and Gary Harding, all of whom work at the U.S. Army Engineer District in Nashville.

Maryland Marine identifies one nonparty witnesses to the allision: Thomas Smith, an operator aboard another vessel waiting for a lock turn when the incident occurred, who lives in Ashland, Kentucky. Another witness, Todd Cochran, has no address listed. Nonparty witnesses involved in the damage identification and repair work are primarily TVA employees, including Tommy Bragwell, Donnie Cansler, and Rick Posey. They live and work in or near the Northern District of Alabama. Maryland Marine identified other nonparty witnesses involved in surveying and evaluating the damage to the barge. They include Fred Budwine and Daniel Chewning from Budwine & Associates in Destrehan, Louisiana; Peter Kolp, Sabine Surveyors, Ltd., Port Arthur, Texas; Kyle Shaw, Higman

Marine Services, Inc., Houston, Texas; and Gil Chatagnier and Gary Brister, Lanier & Associates Consulting Engineers, Inc., New Orleans, Louisiana.

The record shows that the Corps of Engineers personnel with personal knowledge of the allision live and work within 100 miles of Florence, Alabama. The Corps of Engineers and TVA personnel with personal knowledge of the repairs to the locks live and work within 1000 miles of Florence, Alabama, except Jeffrey Ross, who lives in Nashville, Tennessee, 124 miles from Florence, Alabama. (Docket Entry No. 29, Ex. B). Two of the former Maryland Marine employees who were involved in the incident are identified as living in other districts within Texas, more than 100 miles from this courthouse. Of the two current Maryland Marine employees who were involved in the incident, one lives in California and one lives in Mobile, Alabama. Other nonparty witnesses to the allision are seamen whose addresses are not listed. The witnesses identified by Maryland Marine who are knowledgeable about the damage to the barge are primarily in Louisiana and east Texas. Only one is in Houston, Texas.

In short, the key party witnesses (the locks employees and the Corps of Engineers employees who worked on the repairs) are primarily located in the Northern District of Alabama. The current Maryland Marine employees who were witnesses to the allision are located in Mobile, Alabama or Raisin, California; two former employees are in Texas but outside this district and more than 100 miles from this courthouse. Most of the key nonparty witnesses are either in the Northern District of Alabama (the TVA employees involved in

7

repairing the locks) or in the Eastern District of Texas or in Louisiana (the damage surveyors and evaluators retained by Maryland Marine to work on the barge damage). Many of the party and nonparty witnesses are in or near the Northern District of Alabama. Only one appears to be in the Southern District of Texas.

Under the standard adopted in *In re Volkswagen*, the factor of convenience to the witnesses makes the Northern District of Alabama "clearly" more convenient than the Southern District of Texas. 506 F.3d at 384. Even under the standard rejected by that opinion, the proposed transferee venue is "substantially" more convenient for the witnesses, both party and nonparty, than the original venue. This factor weighs heavily in favor of transfer.

**B.     Availability of Compulsory Process To Secure the Attendance of Witnesses**

Maryland Marine acknowledges that its former employees who were crew members at the time of the incident are outside subpoena range whether this case proceeds in Alabama or Texas. The same is true for the surveyors and evaluators in East Texas and Louisiana. Maryland Marine also acknowledges that many of the former employees of the Corps of Engineers or the TVA are within the subpoena range of the Alabama court.

Maryland Marine argues that two of its former employees who were crewmen involved in the allision, and some of the valuation and damage surveyors it hired after the allision, could be compelled to attend a trial in the Southern District of Texas under Rule 45(c)(3)(A)(iii) of the Federal Rules of Civil Procedure because they live in Texas. (Docket

8

Entry No. 30 at 9). Federal Rule of Civil Procedure 45 generally governs subpoenas issued by courts of the United States. Rule 45(b)(2) defines the places where a subpoena may be served. Recently amended on December 1, 2007, it provides:

> (2) Service in the United States. Subject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place:
>
> > (A) within the district of the issuing court;
> >
> > (B) outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection;
> >
> > (C) within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial production, or inspection; or
> >
> > (D) that the court authorized on motion and for good cause, if a federal statute so provides.

FED. R. CIV. P. 45(b)(2).

As Rule 45(b)(2) states, a court's subpoena power is subject to Rule 45(c)(3)(A)(ii), which is part of a broader subdivision of Rule 45 that provides various protections for a person subject to a subpoena. Rule 45(c)(3) sets forth conditions under which a court must or may quash a subpoena. It provides, in relevant part:

> (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
>
> > . . .
> >
> > (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that

9

>person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
>
>. . .
>
>(iv) subjects a person to undue burden.
>
>(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
>
>. . .
>
>>(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

FED. R. CIV. P. 45.[2]

Rule 45(b)(2) states that a subpoena may be served at any place listed in subdivisions (b)(2)(A)–(D). The provisions concerning the possibilities for proper service are listed in Rule 45(b)(2). Rule 45(b)(2) provides that a subpoena may be served: (A) within the judicial district of the issuing court; (B) in areas outside the district but within the 100-mile "bulge" from the location of the district court; (C) within the state of the issuing court consistent with state rules governing the power of state courts of general jurisdiction to issue trial subpoenas;

---

[2] As noted, Congress recently amended Rule 45. The 2007 amendments extensively revised the organization of Rule 45(b)(2), but they did not alter its substance. The stylistic revisions consisted of breaking up the pre-2007 rule from one large paragraph into component parts under separate subsection headings. *See* WRIGHT AND MILLER, 9A FEDERAL PRACTICE AND PROCEDURE § 2451 at 383 (3d ed. 2008) (describing the 2007 amendments as making "purely formal" changes).

or (D) under circumstances specifically provided for in a federal statute. In turn, Rule 45(c)(3)(A)(ii) provides that on timely motion, the issuing court "must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person – except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held. . . ." While Rule 45(c)(3)(A)(ii) provides specific circumstances under which a court must quash a subpoena, "it does not alter the requirements for proper service of a subpoena." *Johnson v. Big Lots Stores*, Nos. 04-3201, 05-6627, 2008 WL 1977507, at *5 (E.D. La. May 6, 2008); *see also Jamsports and Entm't, LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2005 WL 14917, at *1 (N.D. Ill. Jan 3, 2005) ("Read in context, the cross-reference of Rule 45(c)(3)(A)(ii) in Rule 45(b)(2) is meant to reflect that even if service of a subpoena is otherwise proper under Rule 45(b)(2), the subpoena is to be quashed if it imposes a requirement identified in Rule 45(c)(3)(A)(ii)"). Rule 45(c)(3)(B)(iii) in turn states that the court may quash a subpoena if it requires "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial."

      To compel a person to attend trial, the person must be served with a subpoena in one of the places listed in Rule 45(b)(2) *and* not be subject to the protection in Rule 45(c)(3)(A)(ii), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse, but not parties or party officers. It is unclear that the nonparty witnesses

who reside in Kirbyville, Arlington, Beaumont, or Port Arthur, Texas could be compelled to attend trial in the Southern District of Texas; each lives in Texas but outside this district and more than 100 miles from the courthouse.

In *In re Volkswagen*, the Fifth Circuit discussed the effect of the fact that trial subpoenas for witnesses to travel more than 100 miles would be subject to motions to quash under FED. R. CIV. P. 45(c)(3) on the venue analysis under section 1404. In that case, the district court discounted its lack of absolute subpoena power because it could deny a motion to quash and compel the attendance of third-party witnesses found in Texas, subject to reasonable compensation. The Fifth Circuit rejected that analysis. The court emphasized that such a venue is less convenient than a venue in which absolute subpoena power over critical witnesses does exist. The court held that "venue transfer analysis is concerned with convenience. That the district court can deny any motions to quash does not address concerns regarding the convenience of parties and witnesses. Indeed, this rationale simply asserts that a district court, at some burden to the parties, will likely be able to enforce an option that is inconvenient to witnesses. This factor, then, also weighs in favor of transfer." *In re Volkswagen of America, Inc.*, 506 F.3d at 385.

In the present case, the fact that many of the nonparty witnesses knowledgeable about the allision and the damage to the locks (primarily retired U.S. Corps of Engineers and TVA employees) are subject to compulsory process in the Northern District of Alabama, while the few witnesses in Texas could challenge any trial subpoena requiring them to attend trial in

the Southern District of Texas, weighs in favor of transfer.

### C. Relative Ease of Access to Sources of Proof

Recent technological developments have made remote access to many sources of proof much less inconvenient. Records kept electronically by the parties may be accessed easily in either the Northern District of Alabama or the Southern District of Texas. But given the fact that the allision occurred in Florence, Alabama and the repairs were made either there or nearby, there are clearly sources of proof more conveniently accessed in Alabama than in Texas. The relative ease of access to sources of proof consideration weighs in favor of transfer, although less so than the convenience of the witnesses.

### D. The Cost of Attendance for Willing Witnesses

Many of the willing witnesses, party and nonparty, reside in or near the Northern District of Alabama. There are others, primarily one or more Maryland Marine corporate representatives who live in Houston, Texas and the third-party surveyors and damage evaluators Maryland Marine retained, who live in east Texas or Louisiana. For most of the willing witnesses, the cost of attendance would be greater if the case were transferred to Alabama than if it remained in this court. This factor weighs in favor of transfer.

## IV. The Public Interest Factors

The primary contested public interest factor is the local interest in having localized interests decided at home. Maryland Marine points out that government, which is nationally present, owns and operates the locks; no Alabama company was injured by the damage to the

locks, while the damage to the barge injured a Texas company. This argument ignores the fact that the incident occurred in Florence, Alabama, where the locks are located; none of the operative facts occurred in the Southern District of Texas; and the residents of the Northern District of Alabama have a much greater local interest in the case than do the residents of the Southern District of Texas. The local interest in adjudicating local matters weighs in favor of transfer to Alabama.

The only other public interest factor identified is familiarity with the law that will apply. Maryland Marine argues that the Southern District of Texas has more familiarity with admiralty law than the Northern District of Alabama. This argument overlooks the fact that admiralty cases are not limited to districts containing international ports. The Northern District of Alabama has ample experience with admiralty and maritime law. This factor does not weigh against transfer.

**V.     Conclusion**

At a minimum, the party seeking a transfer bears the burden of showing that "the transferee forum is clearly more convenient" than the forum chosen by the plaintiff. *Volkswagen,* 506 F.3d at 384. A more stringent statement of the standard requires the party seeking transfer to show that the transferee forum is "substantially" more convenient. In this case, both standards are met. The Northern District of Alabama is the district in which the allision occurred and the damages were repaired, and it is more convenient for most of the party and nonparty witnesses. The Northern District of Alabama, Florence Division, is

clearly and substantially the more convenient forum. The government's motion to transfer venue is granted.

SIGNED on July 23, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge